UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Verso Corporation<br>310 3rd Avenue North<br>Wisconsin Rapids, WI 54495<br><br>Plaintiff,<br><br>vs.<br><br>United Steelworkers of America<br>Local Union No. 2-94<br>351 10th Avenue North<br>Wisconsin Rapids, WI 54495<br><br>Defendant. | CASE NO. 3:22-cv-194<br><br>JUDGE<br><br><br><br><br><br>**COMPLAINT** |

NOW COMES Plaintiff Verso Corporation ("Verso" or "the Company"), by and through its undersigned counsel, and in support of its action against Defendant United Steelworkers of America Local Union No. 2-94 ("the Union" or "Defendant") states as follows:

## I.   JURISDICTION AND VENUE

1. This is an action by Verso seeking an order to set aside and vacate an arbitration award issued on January 13, 2022, by Charles F. Ammeson in favor of Defendant arising out of a dispute between the parties regarding vacation pay eligibility. This action is brought for the purpose of determining a question of actual controversy between the parties, as set forth more fully below.

2. This action is brought pursuant to Section 301 of the Labor-Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185 *et seq.*; the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*; and the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201.

FP 43635482.1

3. This Court has jurisdiction over this lawsuit pursuant to Section 301(c) of the LMRA, 29 U.S.C. § 185, and 28 U.S.C. § 1331 because the claim arises under federal law.

4. Venue is appropriate in this judicial district pursuant to 29 U.S.C. § 185(a) and 28 U.S.C. § 1391(b) because the subject matter of the arbitration award at issue arose in Wisconsin Rapids, Wisconsin.

## II.   THE PARTIES

5. Verso is a Delaware corporation doing business in Wisconsin Rapids, Wisconsin.

6. Verso produces printing and writing paper, as well as pulp, for its customers, and, therefore, is in an industry affecting commerce within the meaning of 29 U.S.C. § 185(a).

7. The Union is an unincorporated association and "labor organization" within the meaning of 29 U.S.C. § 152(5). At all relevant times, the Union was the exclusive representative of a unit of production and maintenance workers employed by the Company.

## III.   FACTS

### The Collective Bargaining Agreement

8. The Company and the Union were parties to a collective bargaining agreement ("CBA") that governed the terms and conditions of all employees represented by the Union and employed by Verso at its facility located at 310 3rd Avenue North, Wisconsin Rapids, Wisconsin 54495 ("WR Mill") at all relevant times. A true and accurate copy of the CBA is attached hereto as Exhibit A.

9. Section 13 of the CBA governs vacations and provides that, *inter alia*, employees are eligible for between one and seven weeks of paid vacation each year based on their length of service with the Company; the vacation year runs from May 1 to April 30 of the following year; each week of vacation is worth 48 hours' pay; employees earn vacation for the following vacation

year based on hours worked or credited during the current vacation year; and for purposes of calculating their vacation allowance, employees are credited for time lost during the vacation year because of accident and sickness (A&S) leave (up to six months), workers' compensation leave (up to six months), union business, and "temporary shutdowns." *See* Exhibit A, pp. 65-73.

10. A temporary shutdown of the WR Mill historically occurs when a department or area temporarily shuts down due to equipment failures, scheduled repairs, or the need to adjust inventory levels, and with the planned resumption of the affected operations after the cause of the temporary shutdown is addressed. In May 2020, for example, the WR Mill temporarily shut down some of its equipment and temporarily laid off employees because production levels were exceeding customer order levels. The affected employees were told that the shutdown would be temporary, and it was. Once the appropriate inventory levels were reached and equipment restarted, the employees were recalled to work.

11. The CBA includes a grievance and arbitration procedure that expressly limits the power of the arbitrator as follows:

> It is understood that the function of the arbitrator shall be to interpret and apply this Agreement. However, the arbitrator shall have no power to add to or subtract from, or to modify and extend any of the terms of this Agreement, or any agreement made supplementary hereto except by mutual consent of the Company and Union involved. (Exhibit A, p. 99).

**Decision to Indefinitely Idle the WR Mill and the Resulting Effects Bargaining Negotiations**

12. The digital age combined with the recent COVID-19 pandemic severely impacted the demand for Verso's products, including products produced at the WR Mill.

13. In June 2020, Verso issued Worker Adjustment and Retraining Notification ("WARN") Act letters notifying employees that as a result of business conditions, Verso would be indefinitely idling most of the WR Mill's operations and indefinitely laying off employees beginning July 31, 2020. The letter stated: "This action is indefinite in nature and may become

3

permanent." *See* Exhibit B which is a true and accurate copy of the WARN Act letter received by a bargaining unit employee, and is the same letter received by the other employees in the bargaining unit.

14. After issuing the WARN letters, the Company and the Union engaged in effects bargaining.

15. Verso's primary objective during the effects bargaining was to negotiate an effects bargaining agreement that would allow it to efficiently and cost effectively idle the WR Mill indefinitely, while also providing severance and other types of benefits not provided for in the CBA, such as extended medical insurance coverage and Consolidated Omnibus Budget Reconciliation Act ("COBRA") subsidies.

16. Regarding vacation pay, Verso consistently proposed a payout for unused vacation, accrued vacation, and banked vacation calculated as of the date employees were indefinitely laid off. Verso consistently proposed tying vacation payouts to the "date of layoff" to make clear to the Union there would be no further earning or accruing of those benefits after that date.

17. At no time during effects bargaining did Verso state or imply that the decision to idle the WR Mill was temporary. On the contrary, Verso repeatedly expressed that the idling of the WR Mill was indefinite and that it was possible the WR Mill would not resume operating.

### Effects Bargaining Agreement and Subsequent Employment Actions

18. As a result of their effects bargaining, the parties entered into an effects bargaining agreement ("EBA") dated July 29, 2020. A true and accurate copy of the EBA is attached hereto as Exhibit C.

19.     Most employees were indefinitely laid off due to the indefinite idling of the WR Mill on August 2, 2020. However, some employees continued to work beyond that date in order to carry out the idling of the WR Mill and prepare it for winter.

20.     Under the EBA, employees who were indefinitely laid off on or after August 2, 2020, were to receive severance pay based on the number of weeks of vacation they were eligible for under the CBA as of their indefinite layoff date. Also, under the EBA, fifty percent of the severance was to be paid within 90 days of an employee's indefinite layoff date, and the remaining fifty percent was to be paid no later than December 31, 2020. *See* Exhibit C, p. 1.

21.     The EBA provided in Section 4 that "[u]nused vacation, accrued vacation, banked vacation, banked holidays, and banked call time not used as of the date of layoff will be paid out per the severance payment schedule." (Exhibit C, p. 3). The EBA contained no provision for the payment of any vacation pay accrued after employees were placed on indefinite layoff.

22.     Paper and pulp making operations at the WR Mill never resumed after August 2, 2020. On October 31, 2020, the WR Mill was permanently shut down, and employees who were indefinitely laid off on or after August 2, 2020, were terminated.

23.     Per the EBA, Verso paid fifty percent of the vacation pay employees had accrued as of their indefinite layoff dates within 90 days of their indefinite layoff dates, and the remaining fifty percent of the vacation they had accrued as of their indefinite layoff dates by December 31, 2020. Because the WR Mill was indefinitely idled and not temporarily shut down between August 2, 2020 and October 31, 2020, employees who were indefinitely laid off during that period were not given credit for that time for vacation accrual purposes.

## The Arbitration Proceeding and Award

24. In January 2021, the Union filed a grievance under the CBA claiming that the Company should have paid employees for accrued vacation while they were indefinitely laid off during the indefinite idling of the WR Mill between August 2, 2020 and October 31, 2020. *See* Exhibit D which is a true and accurate copy of the Union's grievance.

25. The grievance was processed under Section 22 of the CBA and was ultimately taken to arbitration pursuant to Step 4 of the grievance process. Arbitrator Charles F. Ammeson ("the Arbitrator") was jointly selected by the parties to hear and decide the Union's grievance.

26. The Arbitrator conducted a virtual hearing on October 21, 2021. The Company and the Union called and examined witnesses and offered documents into the record.

27. The parties stipulated to the Arbitrator the following issue: "Whether the Employer violated the CBA by failing to credit employees for time they were laid off between August 2, 2020, when the mill was indefinitely idled, and October 31, 2020, when the mill was permanently shut down and, if so, what is the appropriate remedy."

28. On January 13, 2022, the Arbitrator issued an award sustaining the grievance. A true and accurate copy of the arbitration award is attached hereto as Exhibit E.

29. The Arbitrator ordered Verso to pay employees for vacation he determined they should have accrued between August 2, 2020 and October 31, 2020, which in total exceeds $400,000. Despite the Arbitrator's acknowledgment that the terms "indefinite" and "temporary" are distinguishable, he concluded that Verso's "indefinite idling" of the WR Mill on August 2, 2020, was a "temporary shutdown" as contemplated by Section 13 of the CBA, which allows employees to be credited for time lost during the vacation year because of, *inter alia*, "temporary shutdowns." *See* Exhibit E, p. 11.

30. The Arbitrator did not analyze the meaning of the terms "temporary shutdown" and "indefinite idling" based on the evidence presented at the hearing and, instead, concluded that, "…the term 'indefinite idle' is not reasonably interpreted or understood to be a 'permanent shutdown'. As such, …it was a 'temporary shutdown', and most certainly not a 'permanent shutdown'." (Exhibit E, p. 13).

31. The Arbitrator concluded that the EBA did not "utilize the term 'indefinite idle'" (Exhibit E, p. 12), but the first sentence of the EBA specifically states that, "As a result of the indefinite idling and possible closure of" the Mill, "the parties. . .have met and agreed to a series of items pertaining to Effects Bargaining. . ." (Exhibit C, p. 1).

32. The Arbitrator also concluded that "there is nothing in Section 4 of" the EBA indicating that "there would be no further earning or accruing of vacation entitlement after the initial layoff" (*i.e.*, the layoff on August 2, 2020) (Exhibit C, p. 13); but Section 4 of the EBA specifically states that:

> Unused vacation, accrued vacation, banked vacation, banked holidays, and banked call time **not used as of the date of layoff** will be paid out per the severance payment schedule. *Emphasis added. (*Exhibit C, p. 3).

33. Although the Arbitrator acknowledged that Section 4 of the EBA "is not ambiguous on its face," (Exhibit E, p. 15), he inexplicitly ignored the language of Section 4 emphasized in Paragraph 32 above. Instead, in support of his ruling that the EBA did not preclude the accrual of vacation pay from August 2, 2020 to October 31, 2020, the Arbitrator indicated that he was rejecting "the *suggested* Employer argument" (*emphasis added*) that the severance pay provision in Section 2 of the EBA was meant to replace the vacation payment set forth in Section 4 of the EBA (Exhibit E, pp. 14-15), despite the fact that Verso never made such an argument during the arbitration proceeding.

7

**COUNT ONE**

34. Plaintiff restates and reasserts the allegations contained in Paragraphs 1 through 33 as stated above.

35. The Arbitrator exceeded his authority under applicable law by disregarding the language of the CBA limiting the accrual of vacation pay to (among other things) a temporary shutdown of the WR Mill, and by, instead, adding "indefinite idling" to the list of circumstances in which employees can be credited for vacation accrual purposes.

36. The Arbitrator also exceeded his authority under applicable law because he disregarded the language of the EBA that only unused, accrued, and banked vacation as of the date of an employee's indefinite layoff will be paid, thereby subtracting that provision from the EBA.

37. By ignoring and adding to the language of the CBA and ignoring and subtracting from the language of the EBA, the Arbitrator also exceeded his authority under Section 23 of the CBA, which expressly states that "the arbitrator shall have no power to add to or subtract from, or to modify and extend any of the terms of this Agreement, or any agreement made supplementary hereto except by mutual consent of the Company and Union involved." *See* Exhibit A, p. 99.

38. The Arbitrator did not engage in an interpretation of the CBA and EBA and, to the contrary, he issued an award that is not supported by any reasonable interpretation of those agreements.

39. Because the Arbitrator exceeded his authority as set forth above, his award does not draw its essence from either the CBA or the EBA and, accordingly, the award should be vacated.

WHEREFORE, Plaintiff Verso Corporation respectfully requests that:

(a) This Court enter a judgment vacating the arbitration award issued by Arbitrator Charles F. Ammeson on January 13, 2022, and denying Defendant Union's grievance against Verso; and

(b) This Court grant Plaintiff such other and further relief as may be just and proper.

Respectfully submitted,

*/s/ David E. Schreiner*
David E. Schreiner (*admitted to practice 4/6/22*)
(OH Bar No. 0017518)
Brittany Brantley (*admitted to practice 4/6/22*)
(OH Bar No. 0091109)
FISHER & PHILLIPS, LLP
200 Public Square, Suite 4000
Cleveland, OH 44114
Telephone: (440) 838-8800
Facsimile: (440) 838-8805
dschreiner@fisherphillips.com
bbrantley@fisherphillips.com

*Counsel for Verso Corporation*